# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| SARAH PALMQUIST ET AL., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:21-CV-90 |
| | ) | |
| THE HAIN CELESTIAL GROUP, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STRIKE DECLARATION OF ALI TORKAMANI, Ph.D

# TABLE OF CONTENTS

Introduction ...................................................................................................... 1

Factual Background ........................................................................................... 1

Argument ........................................................................................................... 8

    I.      Hain's Motion to Strike Is Untimely. .......................................... 10

          A.      Hain's untimely motion violates the Court's scheduling order. ...... 11

          B.      Hain cannot show good cause for violating the Court's scheduling order. ............................................................... 12

    II.     Unlike Hain, Plaintiffs Have Complied With All Deadlines. ..................... 14

          A.      At worst, Dr. Torkamani's declaration is a timely supplemental expert disclosure. ...................................... 14

          B.      Even if characterized as a rebuttal report, Dr. Torkamani's declaration was timely. ........................................................ 20

    III.    Even if Dr. Torkamani's Declaration Were Untimely, Striking His Declaration Is Not Appropriate. ................................................................. 23

          A.      The timing of Plaintiffs' disclosure is substantially justified. ......... 24

          B.      The timing of Plaintiffs' disclosure is harmless. .............................. 26

Conclusion ...................................................................................................... 30

Certificate of Service ...................................................................................... 32

## INTRODUCTION

Hain is upset that Dr. Ali Torkamani—a highly qualified scientist with deep experience in genetics—had the temerity to "criticiz[e]" the genetics testimony of "two of world's leading experts" (Drs. Daniel Geschwind and Alexander Kolevzon) that Hain hired to opine on "autism and its causes." ECF 68 at 11. To suppress Dr. Torkamani's criticism, Hain seeks to strike the declaration he prepared in support of Plaintiffs' motions to exclude the testimony of Hain's experts, Drs. Geschwind and Kolevzon. Hain's motion is both untimely and meritless.

According to Hain, Plaintiffs' use of Dr. Torkamani's declaration in support of their motions to exclude amounted to an untimely disclosure of a rebuttal expert witness. Hain misreads the applicable deadlines and Dr. Torkamani's role. Indeed, the only deadline violated here was by Hain's motion, which came more than a week after the Court's September 15 deadline for pretrial motions. Hain's motion to strike boldly invites the Court to at once excuse Hain's flagrant disregard of the Court's scheduling order while imposing post-hoc deadlines on Plaintiffs. For many reasons, the Court should decline Hain's invitation to disparately treat the parties here.

## FACTUAL BACKGROUND

Hain's motion to strike omits key factual details undermining Hain's narrative. Plaintiffs fill in those gaps.

**The Court's evolving scheduling order sets only some deadlines**. On June 16, 2021, the Court entered its initial scheduling order. ECF 30. Two deadlines are relevant: (1) April 1, 2022, for "Identification of **plaintiffs' experts** and production of experts'

reports in the form required by Fed. R. Civ. P. 26(a)(2)(B)"; and (2) May 6, 2022, for "Identification of **defendants' experts** and production of experts' reports in the form required by Fed. R. Civ. P. 26(a)(2)(B)." *Id.*

Plaintiffs met their deadline on April 1 by producing, among other things, Dr. Torkamani's evaluation of the comprehensive genetic testing performed on Ethan Palmquist showing no genetic cause for his condition. *See* ECF 68-2.

Hain did not meet its May 6 deadline. Rather than disclosing its experts and accompanying reports by that deadline, Hain requested an extension of deadlines in the scheduling order—a request Plaintiffs did not oppose. The Court granted Hain's request. *See* ECF 33–34.

In the new scheduling order, Hain's expert-disclosure deadline extended to June 3, more than two months after Plaintiffs' expert disclosures. *See* ECF 34. That same revised order set an August 15 deadline for dispositive motions; a September 15 deadline for "**ALL OTHER PRETRIAL MOTIONS**"; and a September 30 deadline to "**EXCHANGE PRETRIAL MATERIALS**." *Id.*

Shortly before the August 15 dispositive-motion deadline, Hain once more requested a extension—which Plaintiffs again did not oppose. The Court granted Hain's requested extension to August 19. ECF 46–47. No other scheduling-order deadlines were adjusted or added.

Notably, the Court's scheduling order never established deadlines for disclosures of expert witnesses "intended solely to contradict or rebut evidence on the same subject

matter" identified by a prior expert report, FED. R. CIV. P. 26(a)(2)(D)(ii), or for supplemental disclosures, *see id.* 26(a)(2)(E), (e)(2).

**To bolster its forthcoming expert reports, Hain deposes Dr. Torkamani on topics beyond the scope of his initial analysis.** On May 16, shortly before Hain produced its experts' reports, Hain's counsel deposed Dr. Torkamani. ECF 68-3. The questioning by Hain's counsel went far beyond Dr. Torkamani's analysis of Ethan's genetic testing. Rather, it included questioning specifically about Dr. Daniel Geschwind, one the genetics experts Hain had yet to disclose. *See id.* 29:14–33:23, 65:16–66:21.

Hain's counsel further questioned Dr. Torkamani about the informational value of negative results from various genetic tests. In response to these questions, Dr. Torkamani explained, for example, that the combined yield (proportion of tests that identify a pathogenic variance in the subject's genome) of the tests performed on Ethan (Fragile X, chromosomal microarray, and whole exome) generally approaches 50 percent. *See id.* 18:8–19:13. Dr. Torkamani added in response to more questioning that specifically in severe cases like Ethan's, one would expect these tests to reveal a pathogenic variance if one were present. *See id.* 43:7–44:4, 85:1–87:11. Still more, Dr. Torkamani detailed how chromosomal microarray and whole exome analyses complement each other and look for any genetic abnormalities, not just abnormalities known to be pathogenic. *See id.* 96:16–116:13, 123:5–132:12.

Dr. Torkamani went on to explain to Hain's counsel that autism is not an exclusively genetic condition. *See id.* 42:8–43:20, 52:13–25, 62:7–12. Dr. Torkamani also explained

that heritability estimates are, at best, an incomplete basis to establish the genetic determinants of disease. *See id.* 62:13–64:21.

**Hain's experts offer outlandish genetics opinions.** On June 3, Hain served its expert disclosures. ECF 68-5; Pls.' Ex. 1. To support its defensive theory that Ethan's injuries result from a preexisting condition, ECF 11 ¶ 77, Hain hired Drs. Geschwind and Kolevzon to diagnose Ethan with a preexisting genetic condition—yet without any evidence of a pathogenic variance in Ethan's genome. They offered these opinions:

- "Ethan's condition is caused primarily by genetics." ECF 68-5 at 11 (emphasis omitted).

- "[T]here is virtually no room for nongenetic ASD risk-factors." *Id.* ¶ 37.

- "Ethan's genetic test results do not undermine the conclusion that genetics is the primary cause of his condition." *Id.* at 27 (emphasis omitted).

- "[G]enetics is the most likely cause of Ethan's ASD." Pls. Ex. 1 ¶ 22.

- "Genetic variation is the most commonly accepted factor to cause ASD, and the most probable cause for ASD in Ethan's case. Many genetic variants that cause ASD have yet to be discovered, as is the case with Ethan. With ongoing advances in knowledge and technology, it is likely that the genetic cause for Ethan's ASD will eventually be identified." *Id.* ¶ 170.

Dr. Geschwind also opined that Ethan's consumption of Hain's tainted products could not have caused his injuries because a subset of genes associated with autism are highly expressive before and just after birth, before Ethan would have consumed Hain's products. ECF 68-5 ¶¶ 78–86. But Dr. Geschwind has never published his "window of vulnerability" theory and so never subjected it to peer review. Nor did he ever bother to explain, for example, why one should expect the timing of the damage to the brain in

(supposedly) *genetically* caused ASD would correspond to the timing of environmentally caused damage resulting in autistic traits.

**Hain produces additional genetics evidence just before the discovery deadline.** In his June 3 report, Dr. Geschwind complained that he lacked access to the raw sequencing data from Ethan's whole exome analysis, which prevented him from the checking the work of the lab that performed the analysis and running the data against updated lists of known risk genes. *Id.* ¶ 69.

It was not until five days after its disclosure of Dr. Geschwind's report (June 8), however—and more than a month after Plaintiffs disclosed Dr. Torkamani's analysis of Ethan's genetics testing results—that Hain subpoenaed the testing lab for that (and other) data. *See* Pls' Ex. 2. The lab produced this data on June 24. *See id.* Hain did not produce this material to Plaintiffs until July 29. *See* Pls' Ex. 3.

**Plaintiffs include Dr. Torkamani's declaration with their motion to exclude Drs. Geschwind's and Kolevzon's genetics causation testimony.** At the August 19 dispositive-motion deadline, Plaintiffs moved for partial summary judgment on Hain's defense claiming that Ethan's injuries result from a preexisting condition. *See* ECF 52. In support of that motion, Plaintiffs moved to exclude the genetics causation testimony of Drs. Geschwind and Kolevzon. *See* ECF 51. And in support of their motion to exclude, Plaintiffs attached the declaration Hain now seeks to strike. *See* ECF 51-2, 68-4.

**1.** The substantive portion Dr. Torkamani's declaration is made up of three parts. The first part discusses the reliability of Dr. Geschwind's opinion that Ethan's condition was caused by his genetics. *See* ECF 68-4 ¶¶ 11–20. It begins by observing that Dr.

Geschwind assigned a genetic cause to Ethan's condition without identifying any pathogenic genetic variance. *See id.* ¶¶ 11–13. To that end, this discussion cites only to the record, Dr. Geschwind's report, an article relied on by Dr. Geschwind, and a U.S. government website. *Id.* nn.4–8. The first part continues by showing that Dr. Geschwind's opinion that there is "virtually no room for non-genetic ASD risk factors," ECF 68-5 ¶ 37, contradicts scientific consensus and Dr. Geschwind's past writings, *see* ECF 68-4 ¶¶ 14–17. Of the 44 footnotes in that demonstration, 34 consist of citations to either Drs. Geschwind's and Kolevzon's reports, articles of which Dr. Geschwind is an author or coauthor, articles relied on by either Dr. Geschwind or Dr. Kolevzon, or information provided by the U.S. government. *See id.* nn.9–52. The first part ends with a discussion of Ethan's testing, informed by Hain's newly produced data from the testing lab. *See id.* ¶¶ 18–20.

The second part of Dr. Torkamani's declaration examines Dr. Geschwind's conclusion that Ethan's condition was not caused by ingestion of Hain's products. *Id.* ¶¶ 21–25. The bulk of that examination is an evaluation of Dr. Geschwind's claim that gene-expression patterns establish exclusive windows of vulnerability for certain injuries from toxic exposures. *See* ECF 68-5 ¶¶ 78–97; ECF 68-4 ¶¶ 24–25. Of the 31 footnotes here, 23 cite either Dr. Geschwind's report or Dr. Geschwind's own research. ECF 68-4 nn.80–111.

The third part is a brief discussion of Dr. Kolevzon's report. Citing to only Dr. Kolevzon's report, this part merely observes that Dr. Kolevzon's conclusion that Ethan's condition is genetic suffers the same flaws as Dr. Geschwind's. *Id.* ¶¶ 26–27.

**2.** Plaintiffs' motion to exclude consists of three sections. The first argues that Drs. Geschwind's and Kolevzon's opinion that Ethan's condition is caused by his genetics is unsupported by sufficient facts or data. ECF 51 at 6–9. That section cites Dr. Torkamani's declaration only once, and for the undisputed proposition that Ethan's genetic testing showed no pathogenic genetic variant. *See id.* at 6.

The second section begins by showing that Drs. Geschwind and Kolevzon improperly leapt from population-level data to the cause of Ethan's condition. *See id.* at 9–16. Those seven pages offer a single "*see also*" cite to Dr. Torkamani's declaration. *See id.* at 13. The bulk of the citations to Dr. Torkamani's declaration occurs in that section's subsequent discussion of Dr. Geschwind's opinion that autism is exclusively genetic. *See id.* at 16–22.

The third section establishes that Drs. Geschwind and Kolevzon failed to take proper account of Ethan's negative family history and negative genetic testing. *See id.* at 23–27. This section cites multiple times to Dr. Torkamani's discussion of Ethan's testing. *See id.*; ECF 68-4 ¶¶ 18–20.

**Though retracting the genetics causation testimony of Drs. Geschwind and Kolevzon, Hain still moves to strike Dr. Torkamani's declaration.** In response to Plaintiffs' motion for partial summary judgment and accompanying motion to exclude, Hain abandoned the opinions of Drs. Geschwind and Kolevzon that Ethan's injuries were caused by some unidentified variance in his genome. *See* ECF 66–67, 70. As a result, the opinions that are the subject of a more than a third of the substantive portion of Dr. Torkamani's declaration, *see* ECF 68-4 ¶¶ 11–17, 26–27, are no longer part of this case.

At any rate, despite its strategic abandonment, Hain moved to strike Dr. Torkamani's declaration.

**The Court continues the trial date until February 2023.** Under the scheduling order, trial was to begin by December 6, 2022. *See* ECF 34 (setting October 7 docket call); Galveston D. Ct. R. 10 ("The docket call is a final pretrial conference and parties should be prepared to discuss any pending matters. At the docket call, the court will set the case for trial on a date certain within the next 60 days."). On October 7, at the request of the parties, the Court continued the trial date until February 2023. ECF 79; *see also* Docket Entry for ECF 79 ("Jury Trial set for 2/6/2023").

## ARGUMENT

Hain seeks to strike Dr. Torkamani's declaration as "essentially" an untimely rebuttal expert disclosure. ECF 68 at 8. But Dr. Torkamani's declaration is exactly what it purports to be: a declaration in support of Plaintiffs' motion to exclude. Plaintiffs offered Dr. Torkamani's declaration in support of their motions to exclude the genetics testimony of Drs. Geschwind and Kolevzon.

Hain hired these two impressively credentialed researchers to absolve Hain's conduct of any connection to Ethan's injuries and to diagnose Ethan with a genetic condition, even in the absence of any identified pathogenic variance in his genome. Unlike Hain's genetics experts, Dr. Torkamani has never offered—and did not in his declaration offer—any opinion whether Ethan's consumption of Hain's tainted products (or anything else) caused his injuries.

Instead, Dr. Torkamani's declaration merely evaluates the reliability of the opinions offered by Drs. Geschwind and Kolevzon:

**DR. GESCHWIND'S DISCUSSION OF THE ROLE OF GENETICS IN ETHAN'S CONDITION IS FLAWED IN MULTIPLE, IMPORTANT RESPECTS**

**DR. GESCHWIND'S DISCUSSION OF HEAVY METALS AND ASD IS FLAWED IN MULTIPLE, IMPORTANT RESPECTS**

**DR. KOLEVZON'S CONCLUSION THAT E.P.'S CONDITION IS CAUSED BY GENETICS LACKS SUPPORT AND IS UNRELIABLE**

Dr. Torkamani's declaration tracks Plaintiffs' motions to exclude. That is unsurprising, as the basic flaws in Drs. Geschwind's and Kolevzon's reasoning are "as unacceptable in science as in law." *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999).

Plaintiffs properly offered Dr. Torkamani's declaration in support of their motion to exclude. But even if the declaration somehow is considered an expert disclosure, Hain's motion is meritless.

Hain's attack fails at outset because Hain's motion is the only act among the parties to violate a deadline. *See* **Part I**. Hain moved to strike a week after the pretrial-motion deadline. *See* **Part I.A**. Hain's motion must be denied because Hain cannot show good cause for its untimely filing. *See* **Part I.B**.

In contrast, Dr. Torkamani's declaration, if an expert disclosure, is timely under the plain meaning of Rule 26. *See* **Part II**. If Dr. Torkamani's declaration is a disclosure under Rule 26(a)(2), the text of Rule 26 makes the declaration a supplemental disclosure, offered more than a month *before* the applicable deadline. *See* **Part II.A**. The declaration is also timely as a rebuttal disclosure, made nearly six months before trial and well before the applicable deadline in Rule 26. *See* **Part II.B**.

But even if the disclosure is considered untimely, its exclusion is inappropriate. *See* **Part III**. Any late disclosure is substantially justified by Plaintiffs' reasonable interpretation of Rule 26, as well as the timing of Hain's disclosure of the genetic-testing lab's raw sequencing data. *See* **Part III.A**. Still more, all relevant factors favor harmlessness. *See* **Part III.B**.

## I.     Hain's Motion to Strike Is Untimely.

Hain's current motion to strike confirms what Plaintiffs already proved in their response to Hain's earlier motion to strike Dr. Damani Parran's supplemental report: Hain does not (or chooses not to) understand the applicable deadlines. *See* ECF 56 at 6–15. Most prominently, Hain's motion to strike, filed on September 23, violates the Court's scheduling order, which requires "**ALL OTHER PRETRIAL MOTIONS**" besides dispositive motions to be filed by September 15. ECF 34.

Federal Rule of Civil Procedure 16 requires the entry of a scheduling order. Fed. R. Civ. P. 16(b)(3)(A). Scheduling orders may be modified only "for good cause and with the judge's consent." *Id.* 16(b)(4). To meet "Rule 16's fairly stringent 'good cause' standard," the party offering an untimely motion must show that the missed deadline "could not reasonably be met." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 2011 WL 5920930, at *3 (S.D. Tex. Nov. 28, 2011) (Rosenthal, J.) (cleaned up).

Hain's motion is untimely: it is a pretrial motion filed more than a week after the scheduling order's applicable deadline. Hain has not shown, and cannot show, good cause for blowing that deadline. Plaintiffs served Dr. Torkamani's declaration nearly a month

before the Court's pretrial-motion deadline. If Hain wished to move to strike, the intervening period provided a reasonable amount of time to do so in a timely fashion.

As Hain has no good cause for it violation of the Court's scheduling order, Hain's hypocritical tardiness alone requires rejecting it motion. *See, e.g.*, *Brown v. Oakland Cnty.*, 2015 WL 5317194 (E.D. Mich. Sept. 10, 2015) (rejecting Rule 37 motion that violated court rules); *see also Crompton Greaves*, 2011 WL 5920930 (denying as untimely a third-party designation filed after pretrial motion deadline; denying as moot motion to strike that untimely filing).

### A.    Hain's untimely motion violates the Court's scheduling order.

The Court's scheduling order is clear: it required "**ALL OTHER PRETRIAL MOTIONS**" besides dispositive motions to be filed by September 15. ECF 34. Hain moved to strike on September 23, more than a week after the deadline. *See* ECF 68.

Proceeding under Rule 37(c)(1), Hain's motion asks the Court to strike evidence as purportedly violating Rule 26(a)(2)'s disclosure requirement and to order Plaintiffs to pay Hain's attorneys' fees. *See* ECF 68 at 8–13. The motion thus is a pretrial motion. *See, e.g.*, *Galarza v. Carnival Corp.*, 2016 WL 7507882, at *1 (S.D. Fla. July 14, 2016) (Rule 37 motion to strike is subject to deadline for pretrial motions); *Brooks v. Felker*, 2011 WL 2313021, at *2 (E.D. Cal. June 9, 2011) (same, for sanctions under Rule 37); *see also Leggett & Platt, Inc. v. Yankee Candle Co.*, 2008 WL 8792255, at *1 (N.D. Tex. Apr. 4, 2008) (motion to exclude expert testimony is a pretrial motion). Indeed, the motion could be nothing else: It is not dispositive, and it is not made under the Federal Rules of Evidence, so it is not a motion in limine. *Cf. Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) ("'*In*

-11-

limine' . . . refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.").

As Hain's motion to strike is a pretrial motion filed after the applicable deadline, it violates the Court's scheduling order.

### B.    Hain cannot show good cause for violating the Court's scheduling order.

Without a showing of good cause, Hain's untimely motion to strike is not viable. *See Crompton Greaves*, 2011 WL 5920930, at *3. The Court should deny Hain's untimely motion because Hain has not shown, and cannot show, good cause.

Hain had nearly a month between Plaintiffs' disclosure of Dr. Torkamani's declaration (August 19) and the pretrial-motion deadline (September 15) to file its motion. Twenty-seven days is a "reasonabl[e]" amount of time to prepare an 11-page motion. *Id.*[1] In fact, Hain had six days longer than this Court provides for parties to draft and file 30-page responses to motions. *See* Galveston D. Ct. R. 5(f) ("any motion or response shall be limited to 30 pages"; "responses should be filed within 21 days"). Confirming Hain's ability to meet the pretrial-motion deadline if it wanted, Hain filed two other motions on September 15. *See* ECF 62–63.

Hain may argue that Plaintiffs have suffered no prejudice from its late motion. But as Chief Judge Rosenthal has explained, "[t]he lack of prejudice to a nonmovant does not equate to an explanation—much less a showing of good cause." *Crompton Greaves*, 2011

---

[1] The motion's argument in support is mispaginated and begins on page 3.

WL 5920930, at *3[2]; *compare* Fed. R. Civ. P. 37(c)(1) (sanction not available if violation was harmless), *with id.* 16(f) (no such limitation). So where (as here) the late-filing "party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). And a finding of good cause is especially inappropriate here, as Hain has repeatedly castigated Plaintiffs for violating (imagined) deadlines. *See, e.g.*, *Gaudet v. Howard L. Nations, APC*, 2021 WL 2446203, at *6 (E.D. La. June 15, 2021) (striking motion filed one-day late and "after vehemently opposing [other party's] request to continue the deadline").

In any event, Plaintiffs have suffered prejudice. Had Hain filed its motion by the deadline, instead of with its September 23 response to Plaintiffs' motion to exclude, Plaintiffs could have filed a response to the motion along with their reply in support of their motion to exclude. Instead, Plaintiffs were forced to triage in their reply, devoting ten percent of its limited space to addressing Hain's motion instead of the substance of Hain's experts' opinions. *See* ECF 70 at 14–15. The damage of Hain's dawdling has been done. The Court should strike Hain's untimely motion.

---

[2] Chief Judge Rosenthal is not alone. *See, e.g.*, *Argo v. Woods*, 399 F. App'x 1, 3 (5th Cir. 2010) ("Since Woods has failed to offer any reason why he could not have filed his motion before the deadline, we affirm the district court's denial of the motion."); *Blackburn v. Cypress Equities I, LP*, No. 3:12-CV-5030-D, 2014 WL 4771765, at *14 (N.D. Tex. Sept. 25, 2014) ("Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish 'good cause.'"); *Gonzales v. United States*, 2007 WL 3275052, at *1 (S.D. Tex. Nov. 1, 2007) (Tagle, J.) ("Absence of prejudice to the non-moving party is not sufficient to establish good cause).

## II.   Unlike Hain, Plaintiffs Have Complied With All Deadlines.

Should the Court reach the merits of Hain's motion, it will find that Dr. Torkamani's declaration was timely. It was timely for Plaintiffs' motion to exclude because it was filed alongside that motion. *See* ECF 51-2. And even considered as an expert disclosure under Rule 26(a)(2), it was timely for trial. Hain argues that Dr. Torkamani's declaration should be treated as a rebuttal disclosure, but the text of Rule 26 precludes that result. At worst, Dr. Torkamani's declaration is a supplemental disclosure, which Plaintiffs had until September 30 to disclose. But even as a rebuttal disclosure, Dr. Torkamani's declaration remains timely. Hain's argument that all rebuttal disclosures are due 30 days from the disclosures rebutted is unmoored from the realities of litigation and the text of Rule 26.

### A.   At worst, Dr. Torkamani's declaration is a timely supplemental expert disclosure.

Dr. Torkamani's declaration is exactly what it purports to be: a declaration in support of Plaintiffs' motions to exclude the expert testimony of Drs. Geschwind and Kolevzon. Plaintiffs disclosed the declaration on August 19, because that date was the deadline for Plaintiffs' motion for partial summary judgment, to which Dr. Torkamani's declaration related through Plaintiffs' accompanying motion to exclude.

But even were this Court to conclude that Dr. Torkamani's declaration serves some other purpose, it is as a supplemental disclosure—one that accounts for information made available only after Plaintiffs' April 1 disclosure, including evidence disclosed by Hain at the end of the discovery window.

-14-

**1.** According to Hain, Dr. Torkamani's declaration is a "rebuttal report" subject to the disclosure deadline set forth in Federal Rule of Civil Procedure 26(a)(2)(D)(ii). *See* ECF 68 at 6–8. Hain notably never quotes the provision of Rule 26 on which it relies. That is because the rule's plain meaning defeats Hain's argument.

The relevant provisions:

- Rule 26(a)(2) requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A).

- Rule 26(a)(2)(B) and (C) then provide the form the disclosures of such witnesses must take. Here, the disclosure must be in the form of a "written report." *See id.* 26(a)(2)(B).

- Next, Rule 26(a)(2)(D) sets the primary deadlines for "these disclosures": in the absence of a court-imposed deadline, disclosure of the witness must occur 90 days before trial, *id.* 26(a)(2)(D)(i), or 30 days after that "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," *id.* 26(a)(2)(D)(ii).

- Rule 26(a)(2)(E) sets a third deadline, which is particularly relevant here. Under this subsection, "parties must supplement these disclosures when required under Rule 26(e)," *id.* 26(a)(2)(E), which, in turn, requires that "[a]ny additions or changes to" "information included in the report and to information given during the expert's deposition . . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," *id.* 26(e)(2). Here, that was September 30. *See* ECF 34.

Hain insists that Dr. Torkamani's declaration is subject to the deadline in subsection (D)(ii) because the declaration evaluates the opinions offered by Drs. Geschwind and Kolevzon. *See* ECF 68 at 6–7. But Hain either misreads Rule 26 or misunderstands the scope of Dr. Torkamani's testimony.

Beginning with the rule, subsection (D)(ii) applies to only the disclosure of witnesses who will present "evidence . . . intended *solely* to contradict or rebut evidence on

-15-

the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." FED.

R. CIV. P. 26(a)(2)(D)(ii) (emphasis added). And the "evidence" referred to in this

subsection is the "evidence" for which the "witness" will be "use[d] at trial to present." *Id.*

26(a)(2)(A); *compare id.* ("[A] party must disclose to the other parties the identity of any

witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or

705."), *with id.* 26(a)(2)(D) (setting deadlines for "these disclosures").

      Here, Plaintiffs have not offered Dr. Torkamani solely to present evidence intended

to contradict or rebut evidence on the same subject matter offered by another expert.

Indeed, both Plaintiffs' disclosure of Dr. Torkamani's analyses of Ethan's genetic testing

and Dr. Torkamani's testimony on the informational value of that testing, the role of

genetics and environment in the etiology of neurodevelopmental conditions, and the

weakness of heritability estimates, occurred *before* Hain's disclosure of Drs. Geschwind

and Kolevzon. And even if the Court excludes Drs. Geschwind's and Kolevzon's genetics

testimony (as Plaintiffs expect), Dr. Torkamani will remain part of Plaintiffs' affirmative

case. By its plain language, then, subsection (D)(ii) does not apply to Dr. Torkamani.[3]

      **2.** On April 1, Plaintiffs timely disclosed Dr. Torkamani and his opinions, which

were based on the evidence in the case at that point. Plaintiffs thus satisfied their burden

under Rule 26(a)(2)(A)–(B), and met the deadline set in Rule 26(a)(2)(D) through the

Court's scheduling order. *See id.* 26(a)(2)(D) ("A party must make these disclosures at the

---

[3] In *Cutler v. Louisville Ladder, Inc.*, 2012 WL 2994271 (S.D. Tex. Jul. 20, 2012) (Atlas, J.), relied on by Hain, the parties did not join issue on the meaning of subsection of (D)(ii), which was not cited until the movant's reply.

times and in the sequence that the court orders."); ECF 30 (setting April 1 as the deadline for "Identification of plaintiffs' experts and production of experts' reports in the form required by Fed. R. Civ. P. 26(a)(2)(B).").

An expert, however, cannot be expected to predict the future. *Cf., e.g.*, *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) ("Plaintiffs do not cite, and the Court is not aware of, any bright line rule that every opinion by an expert must be preliminarily stated in the report, or forever be precluded.") (quotation marks omitted); *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 823 (M.D. Tenn. 2009) (holding that an expert need not include within his report the basis for opinions which he might discuss for the first time in response to the court's questioning at trial). Thus, the Rules allow—indeed, expect—an expert to supplement his proposed testimony to account for later produced evidence if the expert wishes to also account for that information at trial. *See* FED. R. CIV. P. 26(a)(2)(E), (e)(2).

As Hain observes, an expert's supplement is improper only "'where the opinions are based upon information available prior to the deadline for expert disclosures' *and* the supplement 'departs from' or 'expands upon' the original report." ECF 68 at 7–8 (emphasis added); *accord, e.g.*, *Sobrino-Barrera v. Anderson Shipping Co.*, 2011 WL 5245396, at *3 (S.D. Tex. Oct. 24, 2011) (Werlein, J.), *aff'd*, 495 F. App'x 430 (5th Cir. 2012).

That is not the case here. Dr. Torkamani's declaration offers four conclusions: (1) autism is not exclusively genetic, *see* ECF 68-4 ¶¶ 15–17; (2) the newly produced evidence from the genetic-testing lab confirms that Ethan's condition is unlikely to be genetic, *see id.* ¶¶ 18–20; (3) Dr. Geschwind's effort to rule out Hain's conduct as a cause of Ethan's

-17-

condition misstates Dr. Geschwind's own research in important ways, *see id.* ¶¶21–25; and
(4) Dr. Kolevzon's conclusion that Ethan's genetics is the most likely cause of his injuries
is unsupported, *see id.* ¶¶ 26–27.

Only one of those opinions (the third, about gene expression) is "new," ECF 68 at
3, 6, 9. As to the other three, Dr. Torkamani, in response to the deposition questioning of
Hain's counsel, earlier offered that autism is not exclusively genetic and, relatedly, that
heritability estimates are uninformative. *See* ECF 68-3 42:8–43:20, 52:13–25, 62:7–64:21.
*Cf.* FED. R. CIV. P. 26(e)(2) (expert may supplement information provided in a deposition).
And Dr. Torkamani's April 1 report and later deposition reflect his opinion that Ethan's
negative genetic testing is meaningful and makes it "unlikely" that genetics is the cause of
Ethan's injuries. *See* ECF 68-3 18:8–19:13, 43:7–44:4, 61:2–12, 85:1–87:11, 96:16–
116:13, 123:5–132:12.

The three opinions in Dr. Torkamani's declaration that expand on the opinions in
his April 1 report and deposition testimony, as well as the one opinion that departs from
those sources, arise from information that was unavailable at the time of his report and
deposition. This new information made Dr. Torkamani's April 1 report and subsequent
deposition testimony "incomplete" in a "material respect," thus triggering Plaintiffs'
"obligation to supplement." FED. R. CIV. P. 26 advisory cmte. note to 1993 amendment.

Dr. Torkamani explained during his deposition that autism is not exclusively
genetic, and that genetics is unlikely to be the cause of Ethan's injuries, even his autistic
traits. He could not have reasonably expected that Dr. Geschwind would later declare—
only to belatedly retract—that "there is virtually no room for nongenetic ASD risk-factors,"

ECF 68-5 ¶ 37. Nor could he have reasonably anticipated that Drs. Geschwind and Kolevzon would conclude—again only to belatedly retract—that Ethan's injuries were caused by genetics without any identified pathogenic variance in his genome, *id.* at 11, 27; Pls.' Ex. 1 ¶¶ 22, 170. Indeed, those opinions were so inexplicable that Hain now pretends as if they never existed. *See* ECF 68 at 11 (treating Dr. Geschwind's 73-page report as if it consisted of only pages 32–33); ECF 70 at 3–8.

The same holds for Dr. Geschwind's rickety theory that the expression patterns of a slice of autism-risk genes can bracket the period of neurodevelopmental vulnerability to brain damage from heavy metals poisoning. *See* ECF 61 at 24–28. Dr. Geschwind built his theory just for litigation; it has never been published by Dr. Geschwind or anyone else, and has never been subjected to peer review. It was not until Dr. Geschwind's report that Dr. Torkamani had any need to point out the obvious flaws and misrepresentations on which Dr. Geschwind's theory is built.

Dr. Torkamani's review of the data provided by the genetics-testing lab, including his quality check and analysis of the raw sequencing data, *see* ECF 68-4 ¶¶ 19–20, were impossible until he had the data, which Hain did not produce until July 29. Oddly, Dr. Geschwind—who insisted on the importance of reviewing the raw sequencing data, *see* ECF 68-5 ¶ 69—has failed to update his report to account for this new data despite the duty to supplement imposed by Rule 26.

**3.** If Dr. Torkamani's declaration is a report subject to the deadlines in Rule 26, it can only be a supplement, as he is not a rebuttal witness and none of the opinions in his declaration arise from information he (or Plaintiffs) had at the time of his April 1 report.

And as a supplement, Plaintiffs' August 19 disclosure of Dr. Torkamani's declaration was well before the September 30 deadline. *See* FED. R. CIV. P. 26(e)(2) (requiring supplementation "by the time the party's pretrial disclosures under Rule 26(a)(3) are due"); ECF 34 (setting September 30 as the deadline to exchange pretrial materials).  Hain's motion to strike is meritless.

    **B.**    **Even if characterized as a rebuttal report, Dr. Torkamani's declaration was timely.**

Even ignoring the plain language of Rule 26 showing that Dr. Torkamani is not a rebuttal witness and assuming the contrary, Hain's motion to strike remains meritless. Because the Court's scheduling order is silent on the deadline for disclosures of witnesses providing solely rebuttal testimony, Rule 26(a)(2)(D) applies. Hain misreads Rule 26(a)(2)(D)(ii)—which allows for rebuttal disclosures "within 30 days after the other party's disclosure"—as creating a single deadline for rebuttal disclosures tethered to the date on which the rebutted testimony was disclosed. *See* ECF 68 at 6–7. In fact, subsection (D)(ii)'s 30-day window provides merely a safe harbor: a *minimum*, not maximum, time of 30 days to rebut testimony. Here, Plaintiffs disclosed Dr. Torkamani's declaration nearly six months before the trial date, so they have no need for that subsection's safe harbor.

    **1.** Rule 26(a)(2)(D) provides:

(D) *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

    (i) at least 90 days before the date set for trial or for the case to be ready for trial; or

> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

This default rule contemplates two scenarios. First, with no court direction or stipulation for any deadline, "the parties are to exchange expert information simultaneously 90 days before the trial date, although they have an additional 30 days *after that* to disclose evidence intended solely to contradict or rebut evidence on the same subject matter identified in another party's disclosures." 8A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2031.1 (3d ed.) (emphasis added) (WRIGHT & MILLER). Thus, subsection (D) creates two independent default deadlines: 90 days from trial for standard expert disclosures; 60 days for rebuttal disclosures. *See, e.g.*, *Stout v. United Airlines, Inc.*, 2008 WL 11506759, at *3 (W.D. Wash. Sept. 15, 2008) ("[T]he Court ORDERS Defendant to submit its expert report by the rebuttal disclosure deadline as set forth in Rule 26(a)(2), which is sixty days before trial."); *Dixon v. Certainteed Corp.*, 168 F.R.D. 51, 54 (D. Kan. 1996) ("[T]he provision for 30 days to disclose solely contradictory or rebuttal expert testimony simply fulfills a subordinate and secondary purpose of [former] Rule 26(a)(2)(C). It allows such disclosure up to the 60th day before trial, i.e. 30 days later than the 90th.").

The second scenario contemplated by subsection (D) is where, as here, a court sets an initial disclosure deadline but not a rebuttal deadline. There, the independent default rule of 60 days before trial continues to apply *unless* there are fewer than 60 days left when the initial reports are due. In that case, the parties have at least 30 days to make rebuttal

disclosures. "The rule thus provides in all instances a period of not less than 30 days for rebuttal reports." *Dixon*, 168 F.R.D. at 54.

Here, Plaintiffs disclosed Dr. Torkamani's declaration nearly six months before trial, well before the applicable deadline. Thus they need not take advantage of the subsection (D)'s safety valve.

**2.** Hain's contrary argument that subsection (D)(ii)'s 30-day tether applies in all instances of rebuttal disclosure makes little practical sense and ignores the plain language of Rule 26(a)(2)(D). On the practical side, accepting Hain's argument would allow one party to arbitrarily set the deadlines for another. For example, a plaintiff could gather his experts before suing, drop initial reports shortly after suing, and leave the defendant scrambling to find rebuttal experts. That result would hardly encourage a "just, speedy, and inexpensive determination." FED. R. CIV. P. 1.

Thankfully, the plain language of Rule 26(a)(2)(D) does not permit that unfair result. If the 30-day safety valve in subsection (D)(ii) were intended as always setting the applicable deadline, Rule 26(a)(2)(D) would not use the disjunctive "or" in between the deadlines set in romanettes (i) and (ii). Instead, it would use a conjunction like "and" or "but." *Cf. United States v. Woods*, 571 U.S. 31, 45 (2013) (explaining that the "ordinary use [of 'or'] is almost always disjunctive"). Rule 26(a)(2)(D)'s "use of the disjunctive 'or' to separate" deadlines "is indicative of a structure traditionally used to indicate a list of *alternatives*." *Fiveash v. S. E. Pers. Leasing, Inc.*, 2022 WL 1105750, at *4 (W.D. Tex. Apr. 13, 2022) (emphasis added; quotation marks omitted); *accord* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 116 (2012) (explaining that where, as in Rule

26(a)(2)(D), a disjunctive list follows "must," "any one of the [options] satisfies the requirement"). The 30-day safety valve is an alternative, one that Plaintiffs do not need.

Accordingly, no matter whether Rule 26(a)(2)(D) applies, Plaintiffs' disclosure of Dr. Torkamani's declaration was timely.

## III. Even if Dr. Torkamani's Declaration Were Untimely, Striking His Declaration Is Not Appropriate.

Even were this Court to disagree and find that Dr. Torkamani's declaration was untimely, Hain is wrong that the "automatic" result under Rule 37(c) is the declaration's exclusion. ECF 68 at 7–8. As many other courts have held, "call[ing] Rule 37(c)'s exclusion of evidence 'automatic,' . . . cannot be squared with the plain language of Rule 37(c)(1) itself." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006); *accord, e.g.*, *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 772 (W.D. Tex. 2019) ("Rule 37(c) permits—but does not require—exclusion of evidence untimely disclosed."). Rather, as WRIGHT & MILLER explains, "[t]he sanction is automatic" only "in the sense that there is no need for the opposing party to make a motion to compel disclosure . . . as a predicate for imposition of the sanction of exclusion." 8B WRIGHT & MILLER § 2289.1 (3d ed. Apr. 2022 update); *accord James River Ins. Co. v. Janmark Res., Inc.*, 2022 WL 912776, at *1 (S.D. Tex. Mar. 29, 2022) (Miller, J.).

Rule 37(c)(1) instead provides for exclusion only when the untimely disclosure is neither "substantially justified" nor "harmless." And here, any untimely disclosure of Dr. Torkamani's declaration satisfies both of those alternative safe harbors. Indeed, Hain's failure to withdraw its two motions to strike supposedly untimely disclosures (ECF 49, 68)

even after the Court cancelled the docket call and granted the parties' joint request for a four-month continuance confirms that these motions' purpose is simply make-work for the parties and the Court.

### A.    The timing of Plaintiffs' disclosure is substantially justified.

In Part II, Plaintiffs showed that the plain text of Rule 26(a)(2) defeats Hain's argument the Dr. Torkamani's declaration was an untimely rebuttal disclosure, whether because the declaration was not a rebuttal disclosure or, if a rebuttal disclosure, timely. But the Court need not necessarily reach this argument. Even if Plaintiffs are wrong, exclusion is permitted only absent substantial justification, and "[s]ubstantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997); *accord, e.g.*, *Lymphedema & Wound Care Consultants of Am., Inc. v. Health Care Serv. Corp.*, 2022 WL 209562, at *9 (N.D. Tex. Jan. 24, 2022) ("A party's discovery conduct is found to be substantially justified under Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.") (quotation marks omitted).[4]

The question before the Court thus is whether Plaintiffs' view of their obligations is reasonable. It is.

---

[4] *See also, e.g.*, *Tabbert v. Howmedica Osteonics Corp.*, 2017 WL 10316435, at *5 (E.D. Wash. Oct. 18, 2017) (finding that when a party's "failure to disclose . . . would be justified as a reasonable interpretation of Rule 26," that failure "is substantially justified"); *Heffernan v. N. Fla. Workforce Dev.*, 2014 WL 12909197, at *4–6 (N.D. Fla. Nov. 26, 2014) (similar).

The "substantial justification" standard appears throughout the U.S. Code, including multiple times in Rules 26 and 37. It is not "overly stringent," *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003), and is met when a position has a "reasonable basis both in law and fact," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *accord Lymphedema & Wound Care Consultants*, 2022 WL 209562, at *9. As shown above, Plaintiffs have relied on the plain meaning of Rule 26 and other courts' interpretation of Rule 26. Even were this Court to disagree with that interpretation, it is at the very least reasonable. So any untimely disclosure is substantially justified.

Any untimely disclosure of Dr. Torkamani's declaration is also substantially justified by the eleventh-hour arrival of the raw sequencing data from the lab that ran Ethan's genetic testing. Neither Plaintiffs nor Dr. Torkamani had access to that data until the end of July, long after the expiration of the 30-day window Hain claims applies. *See supra*, p. 5. Although that data was integral to Dr. Torkamani's declaration, *see* ECF 68-4 ¶¶ 18–20, Hain never even mentions it in its motion. As Dr. Torkamani's declaration could not been disclosed before Hain's argued deadline, Plaintiffs' supposedly untimely disclosure is substantially justified. *See In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 661 (Bankr. S.D. Tex. 2009) (lack of access to data until after deadline substantially justified untimely disclosure), *aff'd sub nom. Hsu v. West*, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009); *Nationwide Agribusiness Ins. Co. v. Deere & Co.*, 2020 WL 8768073, at *8 (N.D. Tex. Oct. 23, 2020) (similar).

**B.      The timing of Plaintiffs' disclosure is harmless.**

According to Hain, Drs. Geschwind and Kolevzon "are among the world's leading experts regarding the . . . causation" of autism. ECF 68 at 3.[5] While "the hiring of reputable scientists, impressively credentialed, to testify for a fee" does not alone satisfy Rule 702, *Braun v. Lorillard Inc.*, 84 F.3d 230, 235 (7th Cir. 1996), it does allow Hain access to the best resources to process Dr. Torkamani's declaration—which relies primarily on those experts' own sources and consensus statements packaged by the U.S. government, *see supra*, pp. 5–6. What is more, it grants Hain the ability to prepare for a trial four months away, and nearly 6 months from Plaintiffs' disclosure of the declaration. Thus, the August 19 disclosure of Dr. Torkamani's declaration, even if untimely, is also harmless.

In evaluating whether a violation of Rule 26 is harmless, a court looks to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party from including the evidence; (3) the possibility of curing any prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Primrose Operating Co. v. Nat'l Am. Ins.* Co., 382 F.3d 546, 563–64 (5th Cir. 2004). Combined, these factors confirm that any untimely disclosure by Plaintiffs is harmless.

---

[5] Dr. Geschwind is, at best, a leading expert on *genetic* causes of autism. *See* ECF 68-5 ¶¶ 8–15. And, of course, autism is a mere red herring in this case. *See, e.g.*, ECF 64 at 25–34.

**Importance of the evidence.** Hain argues Dr. Torkamani's declaration is unimportant evidence for trial. ECF 68 at 10–12.[6] Hain's argument is partially correct, but only conditionally—and not for the reasons Hain offers.

As Hain observes, much of Dr. Torkamani's declaration is framed around Drs. Geschwind's and Kolevzon's theory that some unidentified pathogenic variance in Ethan's genome caused his injuries. *See supra*, pp. 5–8. But Hain now has abandoned those opinions, leaving Plaintiffs' motion to exclude those opinions unopposed in that respect. *See* ECF 70 at 7–8. When the Court formally excludes those opinions, the corresponding portion of Dr. Torkamani's declaration will lose its importance. Similarly, when the Court excludes the undefended opinion of Dr. Geschwind that heavy metals poisoning could only have caused Ethan's injuries if the poisoning occurred before or shortly after birth, *see* ECF 61, Dr. Torkamani's evaluation of that opinion will likewise lose importance.

But until the Court excludes those opinions, Dr. Torkamani's evaluation is important as a counter to that junk science. And even after exclusion, Dr. Torkamani's reanalysis of the raw sequencing data from the lab that evaluated Ethan's genome will remain important. Hain never argues otherwise, and understandably so. That analysis helps confirm that Ethan's genetics are not the cause of his condition. Even when the Court grants Plaintiffs' motion for partial summary judgment on that alternative cause, *see* ECF 71, Dr. Torkamani's analysis will remain important in painting a full picture for the jury.

---

[6] Rule 26(a)(2) governs disclosures for "use at trial," so its deadlines do not apply to evidence used to support a motion to exclude. *See* ECF 70 at 14–15.

Briefly, Hain's attack on Dr. Torkamani's qualifications to question Drs. Geschwind and Kolevzon, ECF 68 at 10–12, is meritless. While Dr. Torkamani's expertise focuses more "broadly" on "the application of genetics to health," ECF 68-3 24:5–26:9, rather than a singular focus on autism, that expertise nonetheless qualifies him to evaluate genetics-based claims made by others. *See, e.g.*, *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (holding that an "expert witness is not strictly confined to his area of practice, but may testify concerning related applications"); *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009) (holding that expert's generalized medical experience "qualified him to tell the jury that [another expert's] inferential leap was unsupported by medical literature"). Dr. Torkamani is well-positioned, should it be necessary, to explain to the jury just how outlandish and improper these experts' speculative opinions are.

**Prejudice.** Additionally, Hain has suffered no prejudice. Far from sandbagging, Dr. Torkamani's declaration helpfully provides Hain with a preview of the cross-examination Dr. Geschwind may face should any of his unreliable and unhelpful opinions survive. And, as just discussed, by trial, Hain will have had six months to go over Dr. Torkamani's declaration with its impressively credentialed experts and prepare for any cross-examination of Dr. Torkamani. Thus, any "violation of Rule 26(a)(2) was harmless because there is virtually no possibility of surprise at trial." *Good v. Biolife Plasma Servs., L.P.*, 2021 WL 2550853, at *6 (E.D. Mich. June 22, 2021); *accord, e.g.*, *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 823 (M.D. Tenn. 2009) (no prejudice where "Defendant . . . had from September 9, 2008, until February 26, 2009, to prepare to cross-examine" the expert).

Hain's contrary arguments prove only that it is playing games. Hain complains that it will be "severely prejudiced" because "[t]he deadline for Hain's dispositive motions" has passed and Hain needed to challenge anyone offering a "causation opinion." ECF 68 at 9. But its argument is irrelevant to Dr. Torkamani because he made clear that he had "no opinion on whether Ethan's ingestion of heavy metals caused his condition." ECF 68-4 ¶ 21. For any other of Dr. Torkamani's opinions, Hain had three-and-a-half weeks after Plaintiffs' disclosure of his declaration to move to exclude his testimony or to seek an extension of the pretrial-motion deadline. Instead, Hain waited until after that deadline and untimely moved to strike. Hain's strategic choice breaks the link between Plaintiffs' disclosure and any prejudice Hain may face. *See Langley v. IBM Corp.*, 2019 WL 7284946, at *4 (W.D. Tex. Dec. 23, 2019) (finding no prejudice where the aggrieved party "could have sought an extension of the deadline for filing that motion based on the late-served report," but "chose not to do so, and instead sought only to have the Court strike the report").

Hain's related complaint about being unable to "test" Dr. Torkamani's opinions in a deposition, ECF 68 at 9, is misplaced. Lack of "deposition cross examination," ECF 68 at 8, is of no moment because Hain may cross-examine Dr. Torkamani *at trial*. Indeed, a primary purpose of the expert disclosure requirements is to "*reduce*" "the length of" or even "*eliminate* the need for a deposition," FED. R. CIV. P. 26 advisory cmte. note to 1993 amendment (emphases added)—not to lengthen depositions. Depositions of experts, if needed at all, are intended as an "opportunity to *prepare* for effective cross examination" not to conduct that cross-examination before trial. *Id.* (emphasis added).

In any event, Hain's actions speak louder than its words. Because neither party was ready for trial during the original window provided by the Court, they jointly moved to continue the trial until February 2023, and the Court obliged. ECF 79. Hain acknowledged in that joint motion that "[t]his continuance would allow, as appropriate, depositions and supplemental Rule 702 motions to address any prejudice the challenged disclosures" of Dr. Torkamani's declaration and Dr. Parran's supplemental report "may have caused." ECF 75 ¶ 2.

Yet Hain has not asked for any depositions during the continuance, preferring instead to rest on its motions to strike. Again, Hain's strategic choice breaks the link between Plaintiffs' disclosure and any prejudice Hain may face, not just from Dr. Torkamani's declaration, but also from Dr. Parran's supplemental report. *See Langley*, 2019 WL 7284946, at \*4.

**The possibility of curing any prejudice by granting a continuance**. This Court has already granted a continuance that Hain acknowledges cures any prejudice it may face. Hain's strategic choice to sit on its hands favors harmlessness.

**The explanation for the party's failure to disclose**. Even were the Court to conclude that Plaintiffs' interpretation of Rule 26 and the timing of the disclosure of Ethan's raw sequencing data was not a substantial justification, Plaintiffs' explanation would remain legitimate. Nothing surrounding Dr. Torkamani's declaration suggests bad faith. So this factor, like all the others, equally favors harmlessness.

## CONCLUSION

The Court should deny Hain's untimely motion to strike.

Dated:  October 11, 2022          Respectfully submitted,

/s/ Charles R. Parker
Charles R. Parker
charlie@parkersanchez.com

Andy Parker
PARKER SANCHEZ
700 Louisiana Street, Suite 2700
Houston, Texas 77002
Main (713) 659-7200

Constance H. Pfeiffer
Jason R. LaFond
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Main (713) 632-8000

Roland Christensen
Andrew Gould
Caj Boatright

Brittany Clark
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Main (713) 222-3800

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on October 11, 2022, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ Charles R. Parker
Charles R. Parker