UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SARAH PALMQUIST, Individually and as Next Friend of E.P., a Minor, and GRANT PALMQUIST,<br><br>       Plaintiffs,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC.<br><br>       Defendant. | § § § § § § § § § § §   Civil Action No. 3:21-CV-90 |

**DEFENDANT'S SLIDE PRESENTATION IN SUPPORT OF DEFENDANT'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW**

Attached as Appendix A are slides presented by Defendant The Hain Celestial Group, Inc. ("Hain") during oral argument on February 17, 2023 regarding Hain's Rule 50(a) motion for judgment as a matter of law.

DATED:  February 21, 2023    Respectfully submitted,

                 _____

                 Michael X. Imbroscio (admitted *pro hac vice*)
                 Phyllis A. Jones (admitted *pro hac vice*)
                 David N. Sneed (admitted *pro hac vice*)
                 Kathleen E. Paley (admitted *pro hac vice*)
                 Elizabeth T. Fouhey (admitted *pro hac vice*)
                 Nicole M. Antoine (admitted *pro hac vice*)
                 COVINGTON & BURLING LLP

One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-6000
202-778-5868 [Fax]
mimbroscio@cov.com
pajones@cov.com
dsneed@cov.com
kpaley@cov.com
efouhey@cov.com
nantoine@cov.com

Brian G. Cano
State Bar No. 24045613
SDTX Bar No. 622595
FEE, SMITH & SHARP, L.L.P.
2777 Allen Parkway
Suite 800
Houston, TX 77019
713-362-8300
713-362-8302 [Fax]
bcano@feesmith.com

**ATTORNEYS FOR DEFENDANT**
**THE HAIN CELESTIAL GROUP, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 21, 2023, the foregoing was served on all counsel of record via electronic service pursuant to the Federal Rules of Civil Procedure.

<u>/s/  Michael X. Imbroscio</u>

Michael X. Imbroscio (admitted *pro hac vice)*

# Appendix A

# Defendant Hain's Motion For Judgment As A Matter of Law

*Palmquist et al. v. The Hain Celestial Group, Inc.*
February 17, 2023

# NOT IN DISPUTE:

Judge has discretion to defer ruling (Opp. 1-2)

Heavy metals can be neurotoxic at some level (Opp. 3-7)

Plaintiffs do not need to identify "exact" exposure level (Opp. 3)

No dispute about volume of food eaten (Opp. 11-12)

No dispute that Dr. Nelson said what he said (Opp. 17-19)

No dispute there was no warning on Hain's foods (Opp. 25-26)

# NO EVIDENCE:

# 1. NO CAUSATION

# 2. NOT "UNREASONABLY DANGEROUS"

# No Evidence

**Plaintiffs' Response:**

"nearly all the witnesses that have testified at trial admit that *any* level of heavy metals is dangerous to young, developing infants and children"

**Opp. at 24**

**Actual Evidence:**

- **NO** fact witness testified that "any level" is dangerous
- **NO** expert witness testified that "any level" is dangerous
- **NO** one disputed that all foods have trace levels of heavy metals
- **NO** witness testified that Hain's foods had higher levels than other foods

4

# PLAINTIFFS' BURDEN: General & Specific Cause

**Dkt. 132 (Order on Motions for Summary Judgment) at 8**

"Cause in fact has two levels: general and specific . . . . '**General causation** is whether a substance is **capable of causing *a particular injury*** or condition in the general population,' and '**specific causation** is whether a substance **caused *a particular individual's injury***.'"

***Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007)**

"The general rule has long been that **expert testimony is necessary to establish causation** as to medical conditions outside the common knowledge and experience of juror."

# CAUSATION: Must Prove Harmful Level For Specific Injury

**Plaintiffs' Strawman:**  "This Court has also recognized that '[c]onsuming heavy metals is widely known to lead to cognitive impairment, severe illness, and—at high levels—death.' ECF 132 at 3.  Thus, the element of general causation is not seriously in dispute."  Opp. at 4.

**Proper Causation Inquiry:** what *level of exposure* is *sufficient* to cause *Ethan's condition* (major neurocognitive disorder, autism, or otherwise)

**Dkt. 99 (Order on Hain's Rule 702 Motions) at 7:**

"[T]he Palmquists' toxicology experts do point to evidence of the "**harmful level of exposure**" needed **to establish general causation**."

**Dkt. 99 (Order on Hain's Rule 702 Motions) at 7:**

"In *Curtis v. M&S Petroleum, Inc.*, the Fifth Circuit noted that the district court correctly found that the plaintiff's expert had **sufficiently defined** benzine's '**harmful level' of 200–300 ppm** by reviewing government and scientific literature."

# CAUSATION: Must Prove Causation as to *Specific Injury*

## Plaintiffs Resort to Overgeneralizations:

"known to cause **neurodevelopmental issues**"

Opp. at 12

"linked to **brain injuries** like the injuries in this case"

Opp. at 3.

"may increase the risk of **neurodevelopmental toxicity**"

Opp. at 5.

"adversely impact **human health**"

Opp. at 5

"linked to causing **symptoms that can present as ASD**"

Opp. at 6

"**cognitive changes** to the brain"

Opp. at 6

"**harmful**"

Opp. at 7.

"**neurobehavioral health problems**"

Opp. at 7.

## Case Law:

"Plaintiffs' counsel argued at the hearing that the proper inquiry is whether arsenic causes cancer generically as opposed to whether arsenic causes rectal cancer. . . . [T]he **proper issue** before this Court is **not whether arsenic can cause cancer generically**, but **rather whether** it is generally accepted in the scientific community that **arsenic causes *rectal* cancer**."

*Current v. Atochem N. Am., Inc.*, 2001 WL 36101283, at *3 (W.D. Tex. Nov. 30, 2001)

# CAUSATION: Must Prove *Sufficiently Harmful Level*

"**Courts universally reject general causation theories based upon the idea that any amount of a carcinogen, no matter how small, is actionable because an infinitesimal risk can neither be proven nor disproven**. Thus, since an actionable exposure threshold dose cannot, as a matter of law, be merely anything, that means it must be something provable. "

*In re: Zantac*, MDL No. 2924, 2022 WL 17480906 (S.D. Fla. Dec. 6, 2022)

"**Scientific knowledge** of the **harmful level of exposure** to a chemical, plus knowledge that the plaintiff was **exposed to such quantities**, are minimal facts necessary to sustain the plaintiffs' burden. . . ."

*Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)

# CAUSATION: No Expert Testimony On *Sufficiently Harmful Level*



**Dr. Lisa Settles**

"would be **outside of**" her "**expertise**, to give any opinion on **what levels of metal exposure, if any, would be necessary** to cause autism"

2/10 PM Tr. (Settles) 119:22–120:1



**Dr. Stephen Nelson**

"**what level is the threshold to cause that injury is unknown**"

2/13 AM Tr. (Nelson) at 65:3–4

"Q. You don't have an opinion or a view, based on your experience or expertise, about **what is the level of metals that might actually present a risk of heavy metal toxicity** for a child, right?

A. **I don't** -- so the lower limit is not known."

2/13 AM Tr. (Nelson) at 64:21–65:7

# CAUSATION: Differential Diagnosis Is Not a Cure-all

"[A]n expert **may not rely on a differential diagnosis** to **circumvent** the requirement of **general causation**."

*Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012)

"[A]fter conducting a differential diagnosis, the expert diagnosed the plaintiff with RADS. . . . The expert also concluded that the plaintiff's RADS was caused by certain chemicals to which the plaintiff was exposed based on his **analysis of MSDS warnings**, his **examination and testing of the plaintiff**, and the **close temporal proximity** between the plaintiff's exposure and subsequent injury. . . . Despite the expert's differential diagnosis, we held that the district judge did not abuse its discretion in excluding the expert's causation testimony because he **failed to present reliable scientific support showing that the chemicals at issue could actually cause RADS**."

# CAUSATION

**Plaintiffs' Fifth Circuit and Texas cases highlight Plaintiffs' failure of proof:**

- ***Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999) (causation)**
  - "Dr. Stevens testified that the refinery workers were exposed to levels of benzene that were several hundred times above the permissible exposure level of 1 ppm"
- ***O'Neill v. Seariver Mar., Inc.*, 246 F. App'x 278, 280 (5th Cir. 2007) (Jones Act – causation)**
  - "expert witness provided an opinion that a vapor at that location would have been greater than 200 ppm"
- ***Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (no causation)**
  - "although the 1970 phase of the Nilsson study could arguably support the theory that benzene can generally lead to Hodgkin's lymphoma, it would not support the conclusion that it led to Hodgkin's lymphoma in Knight's case"
- ***McManaway v. KBR, Inc.*, 852 F.3d 444, 453 (5th Cir. 2017) (no causation)**
  - "used these control numbers to put each plaintiff into an 'exposure category'" and "gauged whether Plaintiffs' injuries were caused by sodium dichromate based on the assigned exposure categories"

# CAUSATION: Expert Opinion On Exposure Levels Required

## Plaintiffs' Claim:

"Plaintiffs' clinical experts applied the same professional standards in the courtroom that they apply in their **clinical practice to rule out other plausible causes**—which is why this Court found their testimony to be admissible. This sort of clinically reliable analysis is just what the Fifth Circuit contemplates with its rule that '**[c]ircumstantial evidence** can be used to establish injurious exposure.' ***O'Neill*, 246 Fed. App'x. at 279-80.**"

Opp. at 12-13.

## Case Law:

"The standard for causation in **Jones Act** cases is 'very light.'"

"Circumstantial evidence can be used to establish injurious exposure . . . . In Oman, O'Neill saw a plum of vapor when he was gauging and sampling. **An expert witness provided an opinion that a vapor at that location *would have been greater* than 200 ppm**."

*O'Neill v. Seariver Mar., Inc.*, 246 F. App'x 278, 280 (5th Cir. 2007)

12

# CAUSATION

**Plaintiffs' Fifth Circuit and Texas cases highlight Plaintiffs' failure of proof:**

- ***Johnson v. Arkema, Inc.*, 685 F.3d 452, 472 (5th Cir. 2012) (no causation)**
  - "Johnson does not offer any evidence that the actual amounts of tin oxide to which he was exposed were of a sufficient concentration level to cause his restrictive lung disease and pulmonary fibrosis"

- ***Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 609 (Tex. App. 2002) (no causation)**
  - "Dr. Miller's testimony provided nothing outside his differential diagnosis except the temporal proximity of the naphtha fumes to Anderson's symptoms. Dr. Miller admitted that he was not a toxicologist, did not know what chemicals comprised naphtha, and had read no literature connecting naphtha and BOOP"

- ***Clark v. Kellogg Brown & Root L.L.C.*, 414 F. App'x 623, 628–29 (5th Cir. 2011) (Jones Act – causation)**
  - "Clark's expert witnesses testified that the increase in relative risk of AML from benzene exposure was statistically significant at levels of exposure in the single digits of ppm-years"

- ***Silverman v. Watson Pharms., Inc.*, No. CIV.A. H-10-1952, 2013 WL 1645771, at \*1 (S.D. Tex. Apr. 16, 2013) (no summary judgment)**
  - "Plaintiffs retained Dr. Ernest Lykissa—a forensic toxicologist—to testify regarding the results of the lab test results and Mrs. Silverman's condition"

# CAUSATION: Expert Opinion On Exposure Levels Required

## Plaintiffs' Claim:

same professional standards in the courtroom that they apply in their clinical practice to rule out other plausible causes—which is why this Court found their testimony to be

"The principle recognized by the Fifth Circuit in ***Clark***—namely, that **causation can be established** in certain cases **without quantification of the dose levels** at which exposure to a substance causes an injury and qualification of the dose incurred by the plaintiff—is hardly novel."

**Opp. at 13 (citing *Clark v. Kellogg Brown & Root L.L.C*).**

the plaintiff—is hardly novel.  The most recent version of the Federal Judicial

- 13 -

## Case Law:

"**Clark's expert witnesses testified** that the increase in relative **risk** of AML from benzene exposure was **statistically significant at levels of exposure in the single digits of ppm-years**; . . . Taking that evidence together with the experts' **testimony correlating symptoms with particular exposure levels** and identifying the relatively low exposure levels known to be hazardous, the district court found that 'it is more likely than not that Mr. Clark was exposed to benzene at hazardous levels.'"

***Clark v. Kellogg Brown & Root L.L.C.***, 414 F. App'x 623, 628–29 (5th Cir. 2011)

14

# *Silverman v. Watson Pharms., Inc.*, 2013 WL 1681470 (S.D. Tex. Apr. 17, 2013)

"Last, the Watson **defendants argue that there is no evidence** that (1) their product was the substantial factor that caused Mrs. Silverman's illness; (2) Mrs. Silverman **was exposed to harmful inorganic arsenic**; and (3) the Watson defendants' **product contained harmful inorganic arsenic.**"

"The Watson defendants' arguments that Mrs. Silverman cannot demonstrate that she ingested harmful inorganic arsenic or that the Watson defendants' product contained harmful inorganic arsenic. . . . **Plaintiffs' forensic toxicology expert, Dr. Lykissa, testified** that not all organic arsenic is innocuous. . . . He further testified that the human body can process inorganic arsenic in such a way that it will appear organic when excreted in urine."

# CAUSATION: Expert Opinion On Exposure Levels Required

## Plaintiffs Recognized Necessity:

**DKt. 65 (Plaintiffs' Opp. to Hain's 702) at 3:**

"The **precise levels** of heavy metals in Hain's products consumed by Ethan during his critical period of neurodevelopment are **unknown** and unknowable. **Plaintiffs' toxicology experts therefore offered estimates of Ethan's exposure.** In the absence of better data, such estimates are appropriate and helpful."

## This Court Agreed:

**Dkt. 99 (Order on Hain's Rule 702 Motions) at 12:**

"The information in **Dr. Parran's report** is important because it provides helpful information to the jury **about Ethan's consumption patterns**."

16

# CAUSATION: No Expert Testimony On Ethan's Exposure

**No toxicologist testified for Plaintiffs**                    **No Dr. Parran, No Dr. Aschner**



**Dr. Stephen Nelson**

**did not** "do any kind of testing, analysis, mathematical calculations . . . to determine whether there were, in fact, heavy metals in what Ethan ate"

2/13 AM Tr. (Nelson) 64:11–15



**Dr. Lisa Settles**

**did not** "does not "know one way or the other whether there were heavy metals in any of the specific foods that Ethan ate"

2/10 PM Tr. (Settles) 99:12–15



**Mr. Seshagiri Rao**

 "**defer[s] to the other experts in the case**" as to "whether [Ethan's load of heavy metals] was **caused by baby food or some other exposure**"

2/13 PM Tr. (Rao) 74:6–13

# CAUSATION: Post-Hoc Gap-Filling

**Plaintiffs' Explanation:** "Hain did not test its baby food for heavy metals during the relevant period" (Opp. 22)
- **Facts:** Ingredient testing going back to 2011 (Ex. P-1287, Ex. HAIN-396)
- **Facts:** Finished product data for 2016-2017, 2019, 2020-2021, 2021 on (Ex. P-1288, Ex. HAIN-0384, Ex. HAIN-0205, Ex. HAIN-0201)

**Plaintiffs' Explanation:** "there is no question that Hain's baby food carried an inherent risk of heavy-metals toxicity arising out of Hain's ingredients, specifications, and testing standards" (Opp. 24)
- **Facts:** No expert testified to this

**Plaintiffs' Explanation:** "the evidence has shown that these quantities of heavy metals were far above any safe line" (Opp. 11)
- **Facts:** No expert testified to this

# No Evidence Hain's Foods Unreasonably Dangerous

NO expert testified that Earth's Best is different from baby food or grocery store produce:

- Overwhelming evidence is that levels in Earth's Best are consistent with other baby food brands

- Overwhelming evidence is that levels in Earth's Best are consistent with fresh produce and grains

- No expert testified that something about Earth's Best was different

# No Evidence

## NO Expert Testimony On Harmful Levels

## NO Expert Testimony On Ethan's Exposure

## NO Evidence Hain's Products Were Unsafe

# NO EVIDENCE: Marketing Defect

## Expert Testimony Required:

"[O]ur review of Texas case law demonstrates a consensus that **expert testimony is required** in the context of strict liability **marketing defect** claims . . . ."

*Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied)

## Plaintiffs' Record:

# NO Expert Testimony On Marketing Defect

# NO EVIDENCE: Manufacturing Defect

## Expert Testimony Required:

"**Expert testimony** is generally **necessary** to show that **a product was defectively** designed, **manufactured**, or marketed."

*Sigurdson v. Ford Motor Co.*, No. CIV.A.H-04-03429, 2006 WL 417502, at *2 (S.D. Tex. Feb. 21, 2006)

## Plaintiffs' Record:

# NO Expert Testimony on Manufacturing Defect

22