United States Courts
Southern District of Texas
FILED

*September 24, 2024*

Nathan Ochsner, Clerk of Court

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2024

Lyle W. Cayce
Clerk

No. 23-40197

SARAH PALMQUIST, *Individually and as Next Friend of* E.P., *a minor*;
GRANT PALMQUIST,

*Plaintiffs—Appellants*,

*versus*

THE HAIN CELESTIAL GROUP, INCORPORATED; WHOLE FOODS
MARKET, INCORPORATED, *also known as* WHOLE FOODS MARKET
ROCKY MOUNTAIN/SOUTHWEST, L.P.,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-90

Before STEWART, CLEMENT, and HO, *Circuit Judges.*

CARL E. STEWART, *Circuit Judge*:

In 2021, Grant and Sarah Palmquist, individually and on behalf of their minor son ("Palmquists"), sued baby-food manufacturer, Hain Celestial Group, Inc. ("Hain"), and grocery retailer, Whole Foods Market, Inc. ("Whole Foods"), in Texas state court, seeking damages for their son Ethan's physical and mental decline that began when he was about thirty months old. Following removal, the district court dismissed Whole Foods as

No. 23-40197

improperly joined and granted judgment as a matter of law in favor of Hain during trial. The Palmquists appeal the district court's (1) dismissal of Whole Foods on improper joinder grounds, (2) denial of the Palmquists' motion to remand, and (3) grant of Hain's motion for judgment as a matter of law. For the reasons that follow, we hold that the Palmquists were entitled to a remand to state court because the allegations in their state-court complaint stated plausible claims against Whole Foods. Thus, we REVERSE the district court's judgment denying the Palmquists' motion to remand, VACATE the final judgment of the district court, and REMAND with instructions for the district court to remand the case to the state court.

## I. FACTUAL AND PROCEDURAL HISTORY

### *A. Factual Background*

Sarah Palmquist gave birth to Ethan in September 2014 after a healthy and uneventful pregnancy. During the first two years of his life, Ethan met or exceeded developmental milestones The Palmquists allege that during this time, Ethan almost exclusively consumed Hain's Earth's Best Organic Products, which the Palmquists purchased from Whole Foods.

When he was about thirty months old, Ethan's "social, language, and behavior[al]" skills rapidly regressed. Ethan's parents, Grant and Sarah, visited numerous physicians and specialists for a diagnosis and appropriate treatment. They aver that those medical tests revealed that Ethan suffered from several physical and mental disorders. Ethan's physical ailments include seizure disorder, chronic diarrhea, epileptiform disorder (excessive and abnormal brain activity), hypotonia (abnormally decreased muscle tone), and mitochondrial dysfunction. Ethan's mental diagnoses range from intellectual disability to anxiety and aggression. Some physicians attributed most, if not all, of Ethan's symptoms to autism spectrum disorder or major neurocognitive disorder. Some physicians also diagnosed Ethan with heavy-

No. 23-40197

metal poisoning. While the Palmquists assert that heavy metal toxicity caused Ethan's symptoms, Hain attributes the entirety of Ethan's disabilities to autism.

In 2021—several years after Ethan's heavy metal toxicity diagnosis— the House Oversight and Reform Committee released a report ("Committee Report") demonstrating that certain baby foods, including Hain's, contained elevated levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. The Committee Report also revealed that: (1) Hain's Earth's Best Organic Products contained up to 129 parts per billion ("ppb") inorganic arsenic; (2) some of Hain's ingredients contained as much as 352 ppb lead; and (3) Hain did not test for mercury.[1]

From 2014 to 2019, Hain only tested some ingredients in its baby foods for toxic metals but did not test the finished products. In 2019, in an effort to reduce the heavy-metal concentration in its products, Hain stopped using a vitamin pre-mixed ingredient, switched to a lower-arsenic-content rice for its infant cereal, and started final-product testing.

## B. Procedural History

Attributing the high levels of toxic metals appearing in Ethan's blood tests to his consumption of Earth's Best Organic Products, the Palmquists sued both Hain and Whole Foods in Texas state court in 2021, alleging strict-products-liability and negligence claims against Hain and breach-of-warranties and negligence claims against Whole Foods.[2] The Palmquists

---

[1] In 2016, the Food and Drug Administration ("FDA") published draft guidance recommending that infant-rice-cereal producers limit end-product inorganic-arsenic levels to 100 ppb.

[2] Hain is a Delaware corporation with its principal place of business in New York and therefore is a citizen of Delaware and New York. Whole Foods is a citizen of Texas.

3

No. 23-40197

sought to show that heavy-metal exposure causes heavy-metal poisoning and that Ethan's consumption of heavy metals in Hain's products caused his heavy-metal poisoning and resultant cognitive decline. Hain removed the case to federal court, contending that Whole Foods, a multinational supermarket chain headquartered in Austin, Texas, was improperly joined to defeat diversity jurisdiction.[3]

After removal, the Palmquists filed an amended complaint (the "second amended complaint") that purportedly "clarified their allegations against Whole Foods under the federal pleading standard." In their second amended complaint, the Palmquists sought to clarify that their breach-of-warranties cause of action included claims that Whole Foods expressly represented to the public and to the Palmquists that Hain's baby food was safe. The Palmquists also added a negligent-undertaking claim against Whole Foods.

After amending their complaint, the Palmquists moved to remand the suit, countering that they had viable claims against Whole Foods under the Texas Products Liability Act[4] and the Deceptive Trade Practices Act ("DTPA"). The Palmquists based their remand motion on the details in their second amended complaint.

The district court determined that any new claims could not be considered because jurisdiction "is resolved by looking at the complaint at

---

[3] The Palmquists amended their state-court petition once in state court before the case was removed.

[4] Chapter 82 of the Texas Civil Practice & Remedies Code outlines the duties of manufacturers and nonmanufacturing sellers in a products liability action. Section 82.003(a) provides that a nonmanufacturing seller's protection from liability under Chapter 82 can be pierced if one of seven exceptions is established. TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a).

No. 23-40197

the time [the] petition for removal [was] filed." Specifically, the district court concluded that the Palmquists added a new breach of express warranty claim in the second amended complaint, in addition to their new negligent-undertaking claim. Nonetheless, even considering the purportedly new express breach-of-warranty claim the district court concluded that, under the Texas Civil Practice & Remedies Code § 82.003(a), "[g]enerally, retail sellers such as Whole Foods are not liable for the harm caused by the products they sell." The district court subsequently determined that the Palmquists had improperly joined Whole Foods and dismissed their claims against it.

The Palmquists' claims against Hain proceeded in federal court. Prior to trial, Hain moved for summary judgment. The Palmquists' marketing-defect claim, manufacturing-defect claim, and negligent-testing claim all survived summary judgment. On February 6, 2023, a jury trial on the merits commenced. On February 15, 2023, Hain filed a written motion under Rule 50(a) of the Federal Rules of Civil Procedure, requesting that the court enter judgment as a matter of law because the Palmquists (1) failed to either prove specific causation or offer expert testimony to support general causation and (2) lacked sufficient evidence to establish that Ethan had heavy-metal toxicity. On February 17, 2023—after the Palmquists had rested—the court heard, considered, and orally granted in its entirety Hain's motion for judgment as a matter of law under Rule 50(a) finding that the Palmquists had presented "no evidence of general causation." The court explained that the jury "heard no testimony from a qualified expert that the ingestion of heavy metals can cause the array of symptoms that Ethan suffers from, much less any evidence of at what level those metals would have to be ingested to bring about those symptoms." The court ultimately concluded that "the law is clear that such testimony is necessary to show general causation." The Palmquists filed this appeal.

5

No. 23-40197

## II. STANDARD OF REVIEW

Denial of a remand motion and the determination that a party is improperly joined are reviewed de novo. *Int'l Energy Ventures Mgmt., L.L.C., v. United Energy Grp. Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (denying a remand motion); *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (analyzing improper joinder). "[W]e have recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (internal quotation marks and citations omitted). However, this court reviews a district court's procedure for determining improper joinder only for abuse of discretion. *Kling Realty Co.*, 575 F.3d at 513; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309–10 (5th Cir. 2005).

## III. DISCUSSION

The Palmquists contend that the district court erred in its improper joinder analysis and erroneously denied their remand motion. The Palmquists challenge the court's conclusion that they are unable to recover against Whole Foods based on the claims alleged in either their state-court pleading or their second amended complaint. They argue that their second amended complaint detailed viable claims—already alleged in their original state-court petition—against Whole Foods, thus defeating diversity jurisdiction. Specifically, the Palmquists maintain that their state-court petition alleged a breach-of-warranties claim against Whole Foods before the case was removed to federal court and their amended federal court complaint merely contained new *allegations* clarifying how those claims satisfied the newly applicable federal pleading standard. Thus, the Palmquists argue they have stated a claim against Whole Foods, which defeats diversity jurisdiction.

6

No. 23-40197

While the Palmquists concede that circuit precedent recognizes that plaintiffs cannot defeat removal by changing the substance of their pleadings, they nevertheless emphasize that removed plaintiffs are allowed to "clarify a petition that previously left the jurisdictional question ambiguous." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264–65 (5th Cir. 1995) (holding that jurisdiction is judged "on the basis of claims in the state court complaint as it exists at the time of removal"). They contend that longstanding Fifth Circuit precedent holds that plaintiffs may "clarify" and "amplify" their jurisdictional allegations after removal for purposes of improper joinder analysis. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699–700 (5th Cir. 1999).

### A. "Breach of Warranties" Cause of Action

As an initial matter, the parties dispute whether the Palmquists' breach-of-warranties claim pleaded in state court was broad enough to encompass a claim for breach of express and implied warranties. We determine whether removal was proper by examining the Palmquists' pleading at the time of the petition for removal. *See Cavallini*, 44 F.3d at 264. "As the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007) (internal quotation marks and citations omitted). We conduct our improper joinder analysis "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini*, 44 F.3d at 264. Thus, while we will not entertain new theories not raised in state court, we will examine the Palmquists' state-court pleadings and the viability of those claims alleged against Whole Foods, deferring to resolve any doubt or ambiguities in favor of remand. *Griggs*, 181 F.3d at 699.

No. 23-40197

Under the paragraph entitled "Breach of Warranties," the Palmquists' as-removed complaint alleged that:

Whole Foods . . . sold Hain's Earth's Best Organic baby food products and in doing so impliedly warranted to the public generally and specifically that the products were safe for consumption by infants and young children . . . Whole Foods' implied warranty was incorrect given the high levels of heavy toxic metal Hain's baby food products contained . . . [The Palmquists'] injuries were sustained because of Whole Foods' implied warranties.

The "Breach of Warranties" paragraph of the as-removed complaint also stated that:

[The Palmquists] relied on Whole Foods' representations that Hain's Earth's Best Organic baby food products were safe and of the highest quality . . . If Hain's products were as advertised, [the Palmquists] would not have been injured by the product. Hain and Whole Foods markets the Earth's Best Organic baby food products as safe, natural, and organically produced.

The language in the as-removed complaint was broad enough to encompass both breach of express and implied warranties' claims. The paragraph was entitled "Breach of Warranties," which could include both express and implied claims. *See Breach of Warranty*, Black's Law Dictionary (11th ed. 2019) ("[a] breach of an express or implied warranty relating to the title, quality, content, or condition of goods sold."); Tex. Bus. & Com. Code Ann. § 17.50(a)(2) (Texas's Deceptive Trade Practices Act empowers "[a] consumer [to] maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . breach of an express or implied warranty."). Although the language in the as-removed complaint generally discussed Whole Foods' implied warranties, it also discussed Whole Foods' express representations regarding Hain's

8

products. We therefore hold that the district court erred in concluding that the Palmquists added a new breach of express warranty claim in their second amended complaint.

### B. Improper Joinder Analysis

For purposes of our inquiry, circuit precedent directs us to conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether it states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. Circuit precedent makes clear that removed state-court petitions are evaluated under the federal pleading standard. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 204 ("The *Smallwood* opinion instructs us to apply the Rule 12(b)(6)-type analysis, which must mean the entirety of that analysis. Because that analysis is inseparable from the federal pleading standard, this is an instruction to apply the federal pleading standard."); *see also Smallwood*, 385 F.3d at 573.

Before we conduct our improper joinder analysis, we must consider whether the Palmquists were permitted to amend their pleadings to conform to the federal pleading standard. In other words, we must assess whether we may consider the "express factual" language that the Palmquists added in their second amended complaint to describe representations Whole Foods made about its baby products. We will not consider the negligent-undertaking claim, a theory not raised in state court, in our analysis of whether Whole Foods was improperly joined. *Griggs*, 181 F.3d at 700.

In *Peña v. City of Rio Grande City*, this court held that where defendants challenge the pleadings on the merits after a case has been removed to federal court, plaintiffs should be permitted leave to amend their complaint in order to conform to the federal pleading standard. 879 F.3d 613, 617 (5th Cir. 2018). Although *Peña* concerned a motion for judgment on the pleadings rather than improper joinder, *id.* at 616, the same standard—the

No. 23-40197

one provided by Federal Rule of Civil Procedure 12(b)(6) used to assess failure to state a claim—applied. *Id.* at 618 ("The city's motion for judgment on the pleadings is subject to this same standard [to which motions to dismiss are subject]."); *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) ("[T]he standard for dismissal under Rule 12(c) is the same as under Rule 12(b)(6).").[5]

Even if *Peña* is not binding on this panel, its logic makes good sense: a plaintiff should not be penalized for adhering to the pleading standards of the jurisdiction in which the case was originally brought. Otherwise, where there are potentially diverse parties, plaintiffs would essentially have to plead the federal pleading standard in state court for fear of having their claims against non-diverse parties thrown out upon reaching federal courts for failing to comply with the demands of Rule 12(b)(6). *Peña*, 879 F.3d at 617 ("Removal from a notice-pleading jurisdiction is a natural time at which justice would call for the court to permit such an amendment.") (citing *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013)).

Hain next contends that *Cavallini*, *Griggs*, and *ANPAC* foreclose the district court's examination of the post-removal second amended complaint. *See Griggs*, 181 F.3d at 694; *Cavallini*, 44 F.3d at 256; *Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559 (5th Cir. 1993). On this issue, we disagree. Although post-removal filings may not be considered "to the extent that they present new causes of action or theories not raised in the controlling

---

[5] Although *Peña* concerned a district court's denial of leave to amend a complaint under Federal Rule of Civil Procedure 15(a)(1)–(2), by declining to consider the facts alleged in the second amended complaint and instead assessing the as-removed complaint, the district court effectively denied the Palmquists the ability to amend their complaint. To be sure, plaintiffs cannot add new causes of action after a case is removed from state to federal court, but that is not the proposition that *Peña* stands for.

petition filed in state court," they can be considered to the extent they "clarify or amplify the claims actually alleged" in the removed pleading. *Griggs*, 181 F.3d at 700 (citing *Cavallini*, 44 F.3d at 263).

Hain maintains that the district court's decision correctly followed *Cavallini*. It argues that this court similarly rejected the plaintiffs' attempt in *Cavallini* to amplify their allegations consistent with similar facts as the instant case. *See* 44 F.3d at 264 (holding that *ANPAC* "offers no support" for the plaintiffs' assertion that "their amended complaint would have clarified any jurisdictional ambiguity in their state court complaint"). But recall that the *Cavallini* panel pinpointed that, at the time the case was removed, the state-court petition "simply [did] not allege any facts against [the non-diverse defendant]. Other than listing his name and address for purposes of service, the petition [did] not specifically mention [the non-diverse defendant] at all." *Cavallini*, 44 F.3d at 260 n.8. While the petition alleged various causes of action, it did not delineate under which theories the non-diverse defendant could be liable to the plaintiffs. *Id.* It was under these circumstances that the panel determined that "[t]he Cavallinis' proposed amended complaint [did] not clarify the jurisdictional facts at the time of removal; it attempt[ed] instead to amend away the basis for federal jurisdiction." *Cavallini*, 44 F.3d at 265.

Although the Palmquists added an additional negligent-undertaking claim against Whole Foods, they too clarified their existing breach-of-warranties claim with supporting jurisdictional facts. As is the case here, adding new causes of actions and clarifying already alleged causes of actions are not mutually exclusive. We have already determined that the Palmquists may not expand the substance of their pleadings, for jurisdictional purposes, with the negligent-undertaking allegations. We, too, follow circuit precedent by permitting them to "clarify" their already averred jurisdictional allegations after removal for purposes of an improper joinder analysis. *See*

11

No. 23-40197

*Griggs*, 181 F.3d at 700 (acknowledging that post-removal evidence may be considered when determining whether removal was proper "only to the extent that the factual allegations in [petitioner's] affidavit clarify or amplify the claims actually alleged in the amended petition that was controlling when the suit was dismissed"); *Cavallini*, 44 F.3d at 265 (differentiating a case that allows for "clarification of a state court complaint" after removal from a case where "there is no need for clarification of [the] complaint [because] it does not contain allegations against [a non-diverse defendant] that state a claim for relief under [the] legal theories pleaded"); *ANPAC*, 988 F.2d at 565 (holding that "the court is considering information submitted after removal" because it "clarif[ies] a petition that previously left the jurisdictional question ambiguous").

Turning now to the substance of our improper joinder analysis, when conducting a Rule 12(b)(6)-type analysis, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008). A plaintiff must state a claim for relief that is facially plausible by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Yet, the plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

12

No. 23-40197

When considering whether a plaintiff has stated a claim against a non-diverse party in state court,[6] the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* "This means that there must be a reasonable possibility of recovery, not merely a theoretical one." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). The burden of persuasion on a party claiming improper joinder is a "heavy one." *Id.* "[A]ny contested issues of facts and any ambiguities of state law must be resolved" in favor of remand. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

### C. *Nonmanufacturing Seller Liability*

The parties agree that Section 82.003(a)(5) of the Texas Products Liability Act governs whether Whole Foods is potentially liable in this action. Although Section 82.003 appears to *limit* rather than *establish* liability, our court has required plaintiffs to address Section 82.003 to state a claim against

---

[6] Whole Foods does not argue that the Palmquists have committed actual fraud in the pleading of jurisdictional facts.

13

No. 23-40197

nonmanufacturing sellers, *George v. SI Grp., Inc.*, 36 F.4th 611, 620, n.5 (5th Cir. 2022), so we do the same here.[7]

The Palmquists argue that they have pleaded sufficient facts to establish that the exception under Section 82.003(a)(5) applies. Section 82.003(a)(5) provides that a nonmanufacturing reseller may not be held liable unless:

> (A) The seller made an express factual representation about an aspect of the product;
>
> (B) The representation was incorrect;

---

[7] We note, however, that we were unable to locate any caselaw from Texas state courts indicating that Section 82.003 can be used to establish liability in the first instance. *Cf., Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 109 (Tex. 2021) ("Chapter 82 is a liability-restricting statute."); *Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 701 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (assuming that the defendant had met its burden to show that it was a "seller" entitled to the application of Section 82.003 when assessing whether the Section 82.003 exceptions applied); *but cf. McMillian*, 625 S.W. at 109 (describing Section 82.003 as "imposing liability" on nonmanufacturing sellers in certain instances). Rather, Section 82.003 establishes an exception to the common law's imposition of strict liability for sellers of defective products. *McMillan*, 625 S.W.3d at 109 ("Chapter 82 does not expand the pool of potentially liable non-manufacturing sellers beyond those recognized at common law; it reduces that pool."). Thus, the exceptions listed in Section 82.003 appear to be exceptions to that exception. *See Sidwell v. Zuo Mod. Contemp., Inc.*, No. 05-20-00127-CV, 2022 WL 3040634, at *3 (Tex. App.—Dallas Aug. 2, 2022, no pet.) (Chapter 82 "limits the circumstances under which a nonmanufacturing seller may be liable to a claimant . . . unless one of the enumerated exceptions" in Section 82.003 applies) (internal quotation marks and citation omitted). So, it would seem that to recover against a nonmanufacturing seller, a plaintiff would need to prove both a products liability cause of action, *see* TEX. CIV. PRAC. & REM. CODE § 82.001 (2) *and* that one of the Section 82.003 exceptions applied. No party has argued that the Palmquists have not otherwise stated a claim sufficient to establish liability in the first instance, so we need not address it. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal."). We also note that the caselaw requiring plaintiffs to plead facts sufficient to overcome Section 82.003 immunity to state a claim appears to originate from federal, rather than Texas courts. *See, e.g., Alonso ex rel. Est. of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 761 (S.D. Tex. 2005).

14

No. 23-40197

(C) The claimant relied on the representation in obtaining or using the product; and

(D) If the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm[.]

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(5).

The Palmquists argue they can meet each element of this exception. First, they contend that "Whole Foods markets [Hain's] Earth's Best Organic baby food products as safe, natural, and organically produced." Specifically, they state in their second amended complaint that:

> As a seller of "natural and organic foods," Whole Foods specifically represents to its customers that it only sells products that are of the "*highest quality*." Whole Foods further represents to the public that it "*carefully vet[s] our products to make sure they meet our high standards by researching ingredients, reading labels and auditing sourcing practices*." And it promises its customers that "if it doesn't meet our standards, we don't sell it." In short, "Whole Foods" claims to "take pride in what we do sell and even more in what we don't" by *refusing to sell products with harmful ingredients*. Whole [F]oods made these express factual representations about Hain's Earth's Best Baby Food.

The Palmquists further contend that Whole Foods' representations were incorrect given the high levels of heavy toxic metals that Hain's baby food contained, that they relied on Whole Foods' representations that Hain's baby food was safe and high quality, and that had Whole Foods' claims been true, Ethan would not have been injured.

Hain, for its part, contends that the Palmquists cannot satisfy the first element of Section 82.003(a)(5) because the only allegations set forth in the operative complaint are generalized, positive statements, which it asserts are

15

not actionable under Texas law. Per Hain, the statements must be about its baby food products specifically. Whole Foods makes similar arguments, asserting that generalized, positive statements are not actionable under Section 82.003(a)(5). The district court adopted such reasoning in denying the Palmquists' motion to remand. *See Howard v. Lowe's Home Ctrs., LLC*, 306 F. Supp. 3d 951, 958 (W.D. Tex. 2018), *aff'd*, 765 F. App'x 76 (5th Cir. 2019); *Gill v. Michelin N. Am., Inc.*, 3 F. Supp. 3d 579, 585 (W.D. Tex. 2013).

As to Hain's argument that the statements must be about Hain's products specifically, the Palmquists' operative complaint directly links the allegations to Hain's products. And, when conducting a Rule 12(b)(6)-type analysis, we must accept all well-pleaded facts as true. *In re S. Scrap Material Co.*, 541 F.3d at 587.

Hain, Whole Foods, and the district court all relied on decisions from federal courts for the proposition that alleged misrepresentations may be too general to be actionable. This is a problem, however, because "federal courts sitting in diversity apply state substantive law." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (citation omitted). Federal courts look to the decisions of the Texas Supreme Court (and lacking any authoritative decision, decisions from the intermediate appellate courts) to determine matters of Texas law. *Primrose Oper. Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564-65 (5th Cir. 2004). And "any ambiguities of state law must be resolved in favor of remand." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014). Neither Hain nor Whole Foods have pointed to any Texas cases to support its argument that Whole Foods' representations about the quality of its food are too generalized.

Although there are few Texas cases interpreting Section 82.003(a)(5), the few that the Palmquists point to have found fairly generalized statements adequate enough to support a claim against a nonmanufacturing seller. *See*

*Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 702 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that the plaintiff had asserted a viable claim against a seller who assembled a hydraulic lift and "told [the purchaser's] employees that it was 'okay' not to use the outriggers."); *JSC Nizhnedneprovsky Tube Rolling Plant v. United Res., LP*, 2016 WL 8921926, at *9 (Tex. App.—Corpus Christi-Edinburg [13th Dist.] Dec. 21, 2016, no pet.) (holding that the evidence supported a jury finding of liability where a seller incorrectly represented that a pipe was of a certain grade (*i.e.*, quality)). Moreover, other Texas express representation cases outside of those interpreting Section 82.003(a)(5) likewise support the Palmquists' argument that fairly generalized statements may sometimes be actionable. *See Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980) (determining that statements expressing that products were in "excellent condition," "perfect condition," and "just like new" were actionable under Texas's DTPA). This is especially so, under Texas law, where a seller purports to have specialized knowledge. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 338 (Tex. 2011).

The Palmquists alleged that Whole Foods represents that it "carefully vet[s] [its] products to make sure they meet [] high standards by researching ingredients, reading labels and auditing sourcing practices." Accepting these facts as true, and interpreting ambiguities of state law in favor of the Palmquists, we hold that the district court erred in determining that there was no possibility of recovery under Section 82.003(a)(5). In particular, we note that Whole Foods purports to have special knowledge about the ingredients in Hain's baby food that is not available to customers. As the Palmquists argue, the Whole Foods business model depends on this reputation and customers' willingness to a pay a premium for products that Whole Foods advertises as healthy and high quality. Therefore, the district

No. 23-40197

court erred in concluding that Whole Foods was improperly joined and in denying the Palmquists' motion to remand.[8]

### D. The Caterpillar Exception to Remand

Lastly, at issue is whether the district court's refusal to remand the case to state court requires us to vacate the take-nothing judgment. Hain and Whole Foods rely on *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996), to argue against remand. Hain argues that vacatur of the final judgment is not the correct remedy, under *Caterpillar* and *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), because there was complete diversity jurisdiction at the time judgment was entered. It urges this court—in the interests of judicial efficiency and finality—to preserve the judgment below even if we determine remand should have been granted at the beginning of the case. However, the Palmquists argue that, unlike *Caterpillar*, the jurisdictional defect here was not cured prior to judgment. We agree with the Palmquists. Remand is proper in the instant case because the jurisdictional defect was never cured.

The case involving state law claims in *Caterpillar* was removed on the basis of diversity jurisdiction. 519 U.S. at 64. Correspondingly, the district court denied the plaintiff's motion to remand the case to state court. *Id.* Prior to final judgment, however, the sole non-diverse defendant in *Caterpillar* was dismissed after that defendant and the plaintiff voluntarily settled. Thus, the settlement reached between the non-diverse party and the plaintiff created the diversity of citizenship between parties necessary to give rise to federal subject matter jurisdiction. *Id.* The Supreme Court said as much by holding

---

[8] Hain further contends that the Palmquists' claim constitutes a claim for fraud that must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). But Hain failed to make this argument before the district court, thus it is forfeited. *Rollins*, 8 F.4th at 397.

No. 23-40197

that the removal defect was cured when the non-diverse party was dismissed after removal but before trial commenced. *Id.* at 73–75 (holding that the "jurisdictional defect was cured, *i.e.,* complete diversity was established before the trial commenced"). Consequently, the Court declined to remand the case for a new trial in state court. *Id.* The Court affirmed that "[d]espite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a jurisdictional defect remains uncured, the judgment must be vacated." *Id.* at 76–77.

This case is not controlled by *Caterpillar.* The improper removal affected the subject-matter jurisdiction in this case. Unlike *Caterpillar,* complete diversity did not exist at the time judgment was entered because the Palmquists alleged non-fraudulent claims against a non-diverse defendant, Whole Foods. Where a jurisdictional defect lingers (*i.e.,* lack of subject matter jurisdiction) through judgment in the district court, the case must be remanded because the federal court lacked jurisdiction. *McKee v. Kansas City S. Ry. Co.,* 358 F.3d 329, 336 n.4 (5th Cir. 2004). The district court should have remanded the case because "federal courts are courts of limited jurisdiction and because without complete diversity the federal courts do not have subject matter jurisdiction over a case that does not concern a federal question." *See id.* at 336–37.

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's judgment denying the Palmquists' motion to remand, VACATE the final judgment of the district court, and REMAND with instructions for the district court to remand the case to the state court from which it was removed. Because we have determined that the district court erred in denying the Palmquists' motion to remand the case to the state court, we do

No. 23-40197

not address whether the district court erred in granting judgment as a matter of law in favor of Hain.